[Civ. No. 58508. Second Dist., Div. One. Aug. 21, 1980.]

EMPLOYERS CASUALTY COMPANY, Plaintiff and Appellant, v. NORTHWESTERN NATIONAL INSURANCE GROUP et al., Defendants and Respondents.

464

COUNSEL

Parker, Stanbury, McGee, Babcock & Combs and Stephen H. Osborn for Plaintiff and Appellant.

Clausen, Harris & Campbell, Allen D. Johnson, Kenneth H. Clausen, Eddy Paul Balocco, Ned Good and Barry B. Novack for Defendants and Respondents.

OPINION

TITLE, J.*—Plaintiff Employers Casualty Company appeals from a judgment in which the trial court found that its policy of insurance issued to defendant Remic Industries, Inc., afforded coverage to Remic in connection with a vehicular accident involving a tractor which belonged to Remic at the time said policy was issued. Employers initiated the action with a complaint for declaratory relief, and defendant and cross-complainant Northwestern National Insurance Group, which had also issued a policy of insurance to Remic, thereafter filed a cross-complaint for declaratory relief. Both Employers and Northwestern sought declarations from the court as to their rights and duties of defense and indemnification under their respective policies in connection with said accident.

### FACTUAL BACKGROUND

Remic was engaged in the business of manufacturing mobilehomes, in connection with which it acquired a diesel tractor vehicle on June 12, 1974, which it owned from that date until it sold the tractor on October 7, 1975. Northwestern issued a policy of insurance to Remic which was in effect from October 1, 1974, to October 1, 1975. The term of said policy expired as of October 1, 1975, on which date Employers issued its policy of insurance to Remic, which policy was still in effect when the highway accident involving the tractor occurred on June 25, 1976. Both carriers thereafter denied coverage for the accident under their respective policies, and the dispute culminated in the filing of this declaratory relief action.

---

*Assigned by the Chairperson of the Judicial Council.

## Summary of Proceedings

This action was tried by the trial court on an agreed statement of facts. In addition, the parties stipulated to the receipt into evidence of exhibits consisting of the two insurance policies in question as well as copies of the complaints filed in two actions by third party claimants arising out of the accident of June 25, 1976. The agreed statement of facts was as follows:

"1. That Remic Industries is a corporation engaged in the business of mobile home manufacture.

"2. That Employers Casualty and Northwestern National Insurance Group are both corporations and are engaged in the business of insurance.

"3. That on June 22, 1974, Joe Waltz, an individual, sold a 1965 diesel tractor, serial number DLA 4005F2496N, to Remic.

"4. That on October 1, 1974, Northwestern issued a policy of insurance, number CLA 716133 to Remic effective for one year to October 1, 1975.

"5. That on October 1, 1975, the Northwestern policy terminated and was replaced by Employers policy number GLA 797099 providing coverage for one year to October 1, 1976, which policy was subsequently renewed.

"6. That the diesel tractor in question was sold by Remic to D & H Transport on October 7, 1975.

"7. That said tractor was involved in an accident on June 25, 1976, while owned and operated by D & H Transport.

"8. That as a result of said accident various parties have filed actions for personal injuries styled: INABEL BLACK, individually and as Guardian Ad Litem for JOHN BLACK, a minor, WILLIAM BLACK, ROBERT BLACK, and INABEL BLACK, acting as personal representative for the Estate of Samuel Black, deceased.

Plaintiffs,

vs.

James Hannan and Lawrence Dodd, individually and doing business as D & H Transport Co., a co-partnership.

Defendants.

Case No. C 177894,

and,

Ross Eugene Black and Virginia Black, as heirs of the deceased, Mildred Adeline Black and Ross Eugene Black, individually.

Plaintiffs

vs.

D & H Transport, a partnership, James E. Hannan, Lawrence A. Dodd, Remic Industries, Inc., Joseph E. Waltz, Linda Waltz, Does 1 through 50, inclusive,

Defendants.

Case No. C 188719

"9. That upon service of the Complaints on Remic the defense of the action was submitted to Employers by Remic.

"10. That the acts or negligence of Remic or its agents, as complained of in the above noted Complaints, took place, if at all, during the period Remic owned the tractor."

Based upon the agreed statement of facts and the exhibits received in evidence, the trial court ruled that Employers' policy provided coverage to Remic for any liability resulting from the accident of June 25, 1976, and was obligated to pay any judgment or judgments against Remic resulting from that accident. It further held that Northwestern's policy provided no coverage to Remic for any liability resulting from said accident. This appeal followed.

## THE ISSUES

The coverage at issue under both policies in question is generally the coverage under the comprehensive automobile liability provisions of the policies, the language of such provisions in said policies being essentially similar. Briefly stated, the broad issues presented to this court are as follows:

1. · Was coverage afforded Remic under the provisions of the Northwestern policy for said accident? Putting it more succinctly, did the fact that the term of the Northwestern policy had already expired when the accident occurred preclude any liability on the part of Northwestern thereunder?

2. Was coverage afforded Remic under the provisions of the Employers policy for said accident? As a subsidiary issue, does the fact that the tractor was not scheduled by Remic as an insured vehicle preclude any coverage under the Employers policy, even though the policy specifies such coverage of the insured's liability arising out of the ownership, maintenance or use of *any* automobile for injury occurring during the policy period?

### RESOLUTION OF ISSUES

### COVERAGE AFFORDED BY NORTHWESTERN POLICY

### I

While it may be true that the alleged negligence of Remic giving rise to the accident in question may have occurred during the term of Northwestern's policy, it is uncontroverted that the term of said policy had already expired at the time that the accident occurred, Northwestern's policy having expired on October 1, 1975, and the accident having occurred on June 25, 1976. It is also uncontroverted that both policies provide for coverage of bodily injury which occurs during the policy period. This raises the primary issue in connection with the potential liability of Northwestern under its policy, namely, whether the coverage by Northwestern extended to injuries which occurred subsequent to the policy period where the acts leading to the injuries may have occurred during the time when the policy was still in effect. This issue was faced by the Court of Appeal in *Maples* v. *Aetna Casualty*

*and Surety Co.* (1978) 83 Cal.App.3d 641 [148 Cal.Rptr. 80], where similar provisions in Aetna's policy were involved. The court in *Maples* said at page 644: "Stated simply, the primary issue presented to the trial court and raised on this appeal is whether the coverage by Aetna extended to injuries occurring subsequent to the policy period where the acts leading to the injuries occurred during the time when the policy was in effect. ■ The answer is *no coverage* dictated by the general rule, well established, 'that the time of the occurrence of an *accident* within the meaning of an indemnity policy is not the time the wrongful act was committed, but the time when the complaining party was *actually damaged.*'" (Court's italics; see also, *Remmer v. Glens Falls Indem. Co.* (1956) 140 Cal.App.2d 84, 88 [295 P.2d 19, 57 A.L.R.2d 1379].)

For cases reaching the same conclusion as the court in *Maples*, and cited by *Maples*, see *Tulare Co. Power Co. v. Pacific S. Co.* (1919) 43 Cal.App. 315, 325 [185 P. 399]; *Protex-A-Kar Co. v. Hartford Acc. etc. Co.* (1951) 102 Cal.App.2d 408 [227 P.2d 509]; *Arant v. Signal Ins. Co.* (1977) 67 Cal.App.3d 514 [136 Cal.Rptr. 689]; *Tijsseling v. General Acc. etc. Assur. Corp.* (1976) 55 Cal.App.3d 623, 626 [127 Cal.Rptr. 681].

As pointed out by the court in *Maples*, two California cases which reached the opposite conclusion, namely, *Sylla v. United States Fid. & Guar. Co.* (1976) 54 Cal.App.3d 895 [127 Cal.Rptr. 38], and *Oil Base Inc. v. Continental Cas. Co.* (1969) 271 Cal.App.2d 378 [76 Cal.Rptr. 594], are in direct conflict with all other California cases as well as the leading cases from other jurisdictions cited by the *Maples* court. Maples concluded that *Oil Base* and *Sylla* "... have taken a path diverging from that followed by a long line of authority. . . .", and refused to follow the same path, as does this court.

## II

Appellant has called to the attention of the court the case of *Insurance Co. of North America v. Sam Harris Constr. Co.* (1978) 22 Cal. 3d 409 [149 Cal.Rptr. 292, 583 P.2d 1335], which held that under the particular circumstances of that case, coverage existed under the insurance policy in question even though the accident occurred subsequent to the time that the policy period had expired by virtue of cancellation. However, the facts in the *Sam Harris* case are clearly distinguishable

from the facts in our instant case as well as the facts in *Maples* and the above mentioned additional cases relied upon by us, in that the policy involved in the *Sam Harris* case failed to define "occurrences" or "accidents," which led the Supreme Court to conclude that this omission resulted in an ambiguity which in turn required the ascertainment of the insured's reasonable expectation of coverage in accordance with *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168]. These terms are in fact defined unambiguously in Northwestern's policy, in a way essentially the same as the policies in *Maples, Remmer* and *Tijsseling.*

In referring to the general rule set forth in *Maples* and enunciated in *Remmer* and *Tijsseling, supra*, the Supreme Court said at page 412 [of 22 Cal.3d]: "In our view that rule is not applicable to this case. The issue here turns on the meaning of 'occurrences or accidents...during the policy period.' Those words differ from the words construed in *Remmer* and *Tijsseling*. Further, in those cases the policies themselves define 'occurrence' to mean an accident causing injury during the policy period. The policy here, however, defines neither 'occurrences' nor 'accidents.' The meaning of the two words must, therefore, be ascertained by reference to the insured's reasonable expectation of coverage. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 267...." (*Insurance Co. of North America* v. *Sam Harris, supra*, at p. 412.)

In our view the *Sam Harris* case is not contrary to *Remmer, Tijsseling, Maples*, etc. The failure of the court in *Maples* to make reference to the *Sam Harris* case was apparently because the *Sam Harris* decision came down one month subsequent to the decision in *Maples.*

### III

Based upon the above rationale, we conclude that since the Northwestern policy was no longer in effect at the time of the accident on June 25, 1976, the Northwestern policy affords no coverage to Remic.

COVERAGE AFFORDED BY EMPLOYERS POLICY

### I

Having determined that no coverage is afforded Remic under the Northwestern policy, the remaining basic issue to be determined is whether any coverage is afforded Remic for the accident in question by

Employers' policy. The trial court found such coverage to exist, that finding apparently being bottomed on the uncontroverted fact that the accident occurred during the term of Employers' policy. Employers argues that while the tractor was specifically scheduled on the policy issued by Northwestern, that Remic failed to schedule the tractor on Employers' policy, even though the tractor was still owned by Remic at the time Employers' policy took effect on October 1, 1975. It is Employers' position that since Remic did not schedule coverage on the tractor, it did not intend to cover the tractor and consequently Remic could not have reasonably expected coverage to apply to that vehicle. The answer of all of the respondents to this argument is that the policy nevertheless provides under its insuring agreement that Employers will pay damages on behalf of the insured "arising out of the ownership, maintenance or use of *any* automobile," and that consequently coverage is not limited to vehicles listed on the original schedule.

## II

The failure of Remic to schedule the tractor in the policy schedule, when considered in the light of the language of the insuring agreement referring to coverage of *any* automobile, creates an ambiguity in the terms of the policy as to whether the unscheduled tractor was covered. Consequently, under the rationale of *Gray v. Zurich Insurance Co.* (1966)˙ 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168], while doubts as to the meaning of an insurance policy are normally resolved against the insurer, nevertheless the meaning of the policy must be tested in accordance with the insured's reasonable expectation of coverage, and if under the circumstances the insured could reasonably expect coverage for a loss, the insurer will not be exonerated (*Gray* at p. 267). The agreed statement of facts submitted by all counsel to the trial court covered no facts relating to this issue, and no additional evidence was introduced by any party which would serve to illuminate this issue.

What the insured might reasonably anticipate by way of coverage can in most cases be determined from the language of the policy itself. The fundamental rule of construction applicable to contracts of insurance requires the enforcement of a contract according to the intention of the parties as demonstrated by the language employed, read and considered as a whole. (*Home Indemnity Co. v. Leo L. Davis, Inc.* (1978) 79 Cal.App.3d 863 [145 Cal.Rptr. 158].) However, it is also true that the intent of the parties in the particular circumstances is even more important than the strict language used in the contract. The court

in *Dart Transportation Service* v. *Mack Trucks, Inc.* (1970) 9 Cal. App.3d 837, at page 847 [88 Cal.Rptr. 670] stated: "It is also a general rule that the intent and meaning of the parties is far more important than the strict literal sense of the words used in the contract. For that reason it is equally important to consider the subject matter of insurance and the purpose or object which the parties had in view at that time. It is also proper to consider the business of the parties, the circumstances surrounding the making of a contract, the situation of the property, and all other conditions which may have a legitimate bearing upon the intention of the parties."

## III

Since the circumstances involved in the making of a contract as well as the situation of any concerned property may have a legitimate bearing on the intention of the parties, as articulated in *Dart*, it is apparent that if evidence had been presented to the trial court which indicated that the insured specifically intended not to have the tractor covered by Employers' policy, this could well be considered by the trier of fact as negating any possibility that the insured reasonably expected coverage on such vehicle. Counsel for both Employers and Northwestern have improperly attempted to present evidence on such issue in their briefs on appeal filed with this court by going completely outside the record of the trial. For example, Employers states in its brief that Remic never *intended* that the tractor be covered by its policy; and that Remic was in the process of negotiating the sale of the tractor shortly before and at the time the Employers' policy became effective on October 1, 1975, thus at least implying that Remic did not schedule the tractor because it anticipated that it would not continue to own the tractor and thus wanted to avoid the necessity of paying a premium to cover the tractor. Northwestern in turn states in its brief that the tractor was actually sold several weeks prior to the transfer of title on October 7, 1975, and that this fact was covered in a deposition taken before trial, no part of which deposition was placed into evidence. Again going outside of the record, Employers concedes such deposition was taken, and that the deposition suggests the actual sale took place prior to the purchase of the policy from Employers, but nevertheless Employers does not go so far as to stipulate to those facts, further pointing out in its brief that the deposition was somewhat vague and subject to argument. Counsel for both carriers also discussed in their respective briefs the alleged custom and practice in the insurance industry with reference to the requirement that all vehicles to be covered must be scheduled in the policy, and even

though this may be relevant because custom and practice may be used to explain the meaning of contractual language (*King* v. *Stanley* (1948) 32 Cal.2d 584 [197 P.2d 321]), it must be pointed out that again no evidence on this issue was presented to the trial court.

■ This court is not permitted on appeal to consider evidence not before the trial court. (*Arnesen* v. *Raymond Lee Organization, Inc.* (1973) 31 Cal.App.3d 991, 995 [107 Cal.Rptr. 744].) However, evidence of the nature suggested by counsel, if properly introduced at trial, might well have an important bearing on the issue of the reasonable expectation of Remic as to coverage under Employers' policy. (*Dart Transportation Service* v. *Mack Trucks, Inc., supra,* 9 Cal.App.3d 837.)

## IV

The findings of fact of the trial court do not reveal the basis for the conclusion reached by the trial court that coverage exists under the terms of Employers' policy. Rather, the findings of fact on this issue merely state that Employers' policy "...provides coverage to Remic industries for any liability which it may have to the plaintiffs..." arising out of the accident in question. Findings in terms of the bare ultimate fact of coverage as were here found by the trial court make it extremely difficult if not impossible for the reviewing court to ascertain the basis for the trial court's conclusion that coverage existed. ■ It has been held that the question as to whether, from the facts found, a contract existed is a question of law and not of fact so that such alleged finding is merely a misplaced conclusion of law (*Hunter* v. *Sparling* (1948) 87 Cal.App.2d 711 [197 P.2d 807]). An alleged finding as to the existence of coverage is in the same category.

Section 632 of the Code of Civil Procedure requires the trial court to make findings of fact which "fairly disclose the court's determination of all issues of fact." California Rules of Court, rule 232(e), contains the same language and further adds among other things that the findings shall be concisely stated whenever practicable. While we recognize that in the real world of the harried and busy trial judge, prevailing counsel ordinarily draft the findings of fact and conclusions of law upon which the trial judge should be able to confidently rely, this is not always the case, and this creates problems not only for the trial judge but for the reviewing court as well. ■ The reviewing court must rely on such findings of fact and conclusions of law from which to glean the ba-

sis for the trial court's judgment, and where the trial court fails to make findings of fact on material issues which would fairly disclose such determination by the trial court, such failure amounts to reversible error. (*Auer* v. *Frank* (1964) 227 Cal.App.2d 396; *Guardianship of Brown* (1976) 16 Cal.3d 326, 333 [128 Cal.Rptr. 10, 546 P.2d 298]; *Vale* v. *Union Bank* (1979) 88 Cal.App.3d 330, 340 [151 Cal.Rptr. 784].)

■ While it can be reasonably assumed that the trial court found coverage under Employers' policy because the policy term was still in effect at the time of the accident, the ambiguity created by the provision of the policy relating to the coverage for *all* automobiles vis-à-vis the provision for scheduling automobiles required the trial court to resolve such ambiguity by ascertaining the reasonable expectations of the insured as to coverage. Whether this was done by the trial court is not apparent in view of the complete absence of any findings regarding coverage except for the bare conclusion that coverage existed. Findings should have been made on the issues relating to the ambiguity of the policy as well as what the insured could have reasonably expected by way of coverage under the circumstances.

■ We are not unmindful of the fact that counsel for Employers did not object to the failure of the findings to cover these issues. However, it has been held that the failure to find on a material issue is too fundamental a defect to be waived by failure to object or to propose amendments to the findings in the trial court. The rule is that failure to object to the findings is not a waiver of a failure to find on a material issue. (*Sharove* v. *Middleman* (1956) 146 Cal.App.2d 199, 202 [303 P.2d 900].)

The frustration of losing litigants and their attorneys who are frequently faced with findings of fact prepared by successful counsel in terms so "ultimate" that it is extremely difficult, if not impossible, to determine either the factual basis or legal theory of the decision is a frustration which is frequently shared by reviewing courts. If findings are to serve any purpose they should, as Code of Civil Procedure section 632 now requires, "fairly disclose the court's determination of all issues of fact." (*Morris* v. *Thogmartin* (1973) 29 Cal.App.3d 922, 928 [105 Cal.Rptr. 919].)

"If the appellate courts will clearly indicate to trial courts that the trial courts have an obligation to supply a fair record disclosing the court's determination of all issues of fact, there will be a record in the

trial court that enables the parties to know what the decision is based on and the appellate courts will be able to determine the correctness of the conclusions of law." (Horton, *Findings of Fact and Appeals* (1961) 36 State Bar J. 83, 86.)

This court should not be required to speculate in attempting to supply the missing findings based upon statements made in the appellate briefs of the parties which were not included in the evidence presented to the trial court. Rather, this task must be assumed by the trial judge who heard the evidence and who will hear such additional evidence on said issues that may be presented to the trial court upon remand.

## DISPOSITION

That portion of the judgment holding that there is no coverage under the policy issued by Northwestern to Remic is affirmed. In all other respects the judgment is reversed with directions to the trial court to vacate its findings of fact, conclusions of law and judgment insofar as they relate to the liability under Employers' policy; to retry only the issue of liability under Employers' policy; to permit all parties to introduce such additional evidence, if any, on said issue as may be consistent with this opinion; and thereafter to make new findings of fact and conclusions of law upon the basis of the evidence previously presented and such additional evidence as may be presented in conformity herewith, and to enter judgment thereon.

Lillie, Acting P. J., and Hanson (Thaxton), J., concurred.