197 Cal.App.3d 226 (1987)
242 Cal. Rptr. 726
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff and Respondent,
v.
JIMMY DALE LONGDEN et al., Defendants and Appellants.
Docket No. F006400.
Court of Appeals of California, Fifth District.
December 23, 1987.
*228 COUNSEL
Kahn, Soares & Conway and Leonard Herr for Defendants and Appellants.
Nagle, Vale, McDowall, Cotter & Dunn and William D. McDowall for Plaintiff and Respondent.
OPINION
THAXTER, J.[*]
State Farm Mutual Automobile Insurance Company (State Farm) filed a complaint for declaratory relief against appellants Jimmy Dale Longden, Jeffrey John Vierra and Richard and Betty Vierra on June 29, 1984. Appellants answered and Longden filed a cross-complaint for declaratory relief against State Farm. Declaratory judgment in favor of State Farm was filed on September 11, 1985.

FACTS
On March 22, 1982, State Farm issued a policy of automobile insurance to Jeffrey Vierra (Vierra) insuring Vierra's 1975 Chevy Luv pickup truck. Longden and Vierra traded vehicles with one another on June 17, 1982. Longden had owned a 1975 Camaro; he exchanged his Camaro with Vierra for Vierra's pickup truck, plus $300. On June 23, Vierra called State Farm and had his policy switched to cover the Camaro, removing coverage from the truck.
On August 1, 1982, Longden was injured severely in a single vehicle accident when the brakes on the truck allegedly failed.
*229 A complaint by Longden against Vierra claimed Longden's injuries were caused by Vierra's negligent maintenance of the truck and failure to disclose the known (should have known) defects in the brakes at the time of the exchange. At trial, State Farm stipulated that as of January 26, 1983, it had notice of a potential claim against the insured and on April 23, 1984, Vierra's counsel requested that State Farm defend the suit brought by Longden. On June 26, 1984, Vierra stipulated to judgment in the tort action in the amount of $500,000.
Three days later, State Farm filed the declaratory relief action. State Farm sought a declaration that it had "no duty or obligation to either defend or indemnify" Vierra. The trial court so declared in its judgment.
The policy provided in relevant part: "The coverages you chose apply to accidents and losses that take place during the policy period.
".... .... .... .... ....
"We will:
"1. pay damages which an insured becomes legally liable to pay because of:
"a. bodily injury to others, and
"b. damage to or destruction of property including loss of its use,
"caused by accident resulting from the ownership, maintenance or use of your car; and
"2. defend any suit against an insured for such damages with attorneys hired and paid by us." (Italicized words are defined in the policy.)
Appellant's theory below and on appeal is that an "accident," his negligent maintenance or failure to disclose, occurred on June 17, 1982, within the period of coverage, triggering State Farm's duty both to defend and indemnify. Appellant emphasizes the duty to defend is broader than the duty to indemnify and argues that even if State Farm is not bound to indemnify Vierra, it still had a duty to defend.

INTRODUCTION
The facts below were not in dispute. The only question was whether the policy of insurance, given the undisputed facts, obligated State Farm to *230 defend and/or indemnify its insured. On appeal, we review anew this question of law. (Cal-Farm Insurance Co. v. TAC Exterminators, Inc. (1985) 172 Cal. App.3d 564, 571 [218 Cal. Rptr. 407].)

I

DUTY TO INDEMNIFY
(1a) Appellants claim State Farm's liability to indemnify arose under the language in the policy covering "accidents ... that take place during the policy period." Alternatively, or in furtherance of their first point, appellants contend the term "accident," undefined in the policy, is ambiguous and we must construe it in favor of the insured, finding liability. Conversely, State Farm argues the accident did not occur until after the termination of the policy period; that "accident" is not an ambiguous term; and, even if found ambiguous, a reasonable interpretation would not yield a finding of liability here.
Appellants depend upon three cases to support their position  Sylla v. United States Fid. & Guar. Co. (1976) 54 Cal. App.3d 895 [127 Cal. Rptr. 38], Oil Base, Inc. v. Continental Cas. Co. (1969) 271 Cal. App.2d 378 [76 Cal. Rptr. 594] and Insurance Co. of North America v. Sam Harris Constr. Co. (1978) 22 Cal.3d 409 [149 Cal. Rptr. 292, 583 P.2d 1335].
In Sylla, the appellate court, depending in large measure on Oil Base, found insurance coverage for an insured garage keeper when he sold a defective automobile within the policy period, but the buyer was not injured until after the policy lapsed. (54 Cal. App.3d at pp. 900-902.) The court distinguished the policy issued to the insured, who was in the business of repairing automobiles and selling used cars, from "the basic vehicular liability insurance functions." (Id. at p. 899.) The court declared the undefined term "accident" ambiguous, resolved the ambiguity in favor of the insured, and found liability.
In Oil Base, the insured manufacturer sold a defective product during the policy period, the buyer suffering injury after termination of the policy. The insured defended a suit brought by the buyer and sought reimbursement of its fees and expenses from the insurer. The appellate court found the insurer liable for defense expenses. (271 Cal. App.2d 378-389.)
In both Sylla and Oil Base, the courts quote from earlier cases defining "accident" as "... `commonly used in liability policies, the word "accident" is predicated of [sic] an occurrence which is the cause of the injury. *231 That is to say, as used in liability insurance contracts the word is employed to denote the cause, rather than the effect.'" (Maxon v. Security Ins. Co. (1963) 214 Cal. App.2d 603, 612 [29 Cal. Rptr. 586], quoting from Hyer v. Inter-Insurance Exchange, etc. of So. Cal. (1926) 77 Cal. App. 343, 349 [246 P. 1055], and found at Sylla, supra, 54 Cal. App.3d at p. 901, and in Oil Base, supra, 271 Cal. App.2d at p. 387.) Appellants depend upon this definition of "accident" to sustain their position.
Other cases decided before Oil Base and Sylla, however, stated the general rule is "that the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed, but the time when the complaining party was actually damaged." (Remmer v. Glens Falls Indem. Co. (1956) 140 Cal. App.2d 84, 88 [295 P.2d 19, 57 A.L.R.2d 1379]; Tijsseling v. General Acc. etc. Assur. Corp. (1976) 55 Cal. App.3d 623, 626 [127 Cal. Rptr. 681].) Several later cases have rejected the Oil Base/Sylla reasoning and have embraced the "general rule." (Schrillo Co. v. Hartford Accident & Indemnity Co. (1986) 181 Cal. App.3d 766, 772-775 [226 Cal. Rptr. 717]; Wolf Machinery Co. v. Insurance Co. of North America (1982) 133 Cal. App.3d 324, 328 [183 Cal. Rptr. 695]; Employers Casualty Co. v. Northwestern Nat. Ins. Group (1980) 109 Cal. App.3d 462, 468-469 [167 Cal. Rptr. 296]; Maples v. Aetna Cas. & Surety Co. (1978) 83 Cal. App.3d 641, 644-650 [148 Cal. Rptr. 80].) The position taken by the courts in these later cases is in line with that taken in most jurisdictions which have considered the question. (See Annot., Event as Occurring Within Period of Coverage of "Occurrence" and "Discovery" or "Claims Made" Liability Policies (1985) 37 A.L.R.4th 382, § 3 and cases cited therein.)
The court in Maples v. Aetna Cas. & Surety Co., supra, concluded the definition of accident championed in Sylla and Oil Base conflicted with that in the above cases and, after a scholarly exploration and critique of the basis for the conclusions reached in Sylla and Oil Base, declined to follow their divergent path. (83 Cal. App.3d 641, 646-650.) This court has not previously addressed the issue. After reviewing all the cited cases we are persuaded by the court's analysis in Maples. (2) Accordingly, we adopt the widely accepted rule for determining the time of the accident as the time when the "complaining party was actually injured," and reject the contrary definition proffered in Sylla and Oil Base. (1b) Applying this definition to the facts here, the actual injury took place on August 1, outside the policy period.
In the third case relied upon by appellants, Insurance Co. of North America v. Sam Harris Constr. Co., supra, 22 Cal.3d 409 (Harris), the California Supreme Court held that where the use of the words "occurrences or accidents," undefined in the policy, were ambiguous, the general rule "`the time *232 of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed, but the time when the complaining party was actually damaged'" does not apply. (Id. at pp. 411-412.)
In Harris, the insured privately sold his airplane on April 19, 1972. He cancelled his insurance, effective that day. On April 21, 1972, the plane, piloted by its new owner, crashed. The owner sued the insured, claiming the insured "`negligently ... maintained, repaired, serviced, owned, sold and operated the aircraft.'" (Id. at p. 411.) When the insured requested the insurer defend, the insurer filed an action for declaratory judgment. The policy provided coverage for "`occurrences or accidents ... during the policy period.'" (Id. at p. 412.) Finding the words not defined in the policy, the court concluded their meaning "must, therefore, be ascertained by reference to the insured's reasonable expectation of coverage." (Ibid.) Concluding the insured might so reasonably expect coverage, the court found: "We therefore rule that negligent maintenance of the plane within the policy period was an occurrence covered by the policy even though the accident caused thereby did not happen until after the policy period had expired." (Id. at p. 413, italics added.)
The Harris case suggests use of the undefined disjunctive "occurrences or accidents" created an ambiguity and the insured might reasonably expect his negligent maintenance was an occurrence within the meaning of the policy. Here, however, the policy uses only the term "accidents." The difference in policy language clearly makes Harris distinguishable. (See Employers Casualty Co. v. Northwestern Nat. Ins. Group, supra, 109 Cal. App.3d 462, 469-470.) In fact, the Supreme Court in Harris expressly distinguished cases stating the general rule (Remmer v. Glens Falls Indem. Co., supra, 140 Cal. App.2d 84; Tijsseling v. General Acc. etc. Assur. Corp., supra, 55 Cal. App.3d 623) on that basis. (Harris, supra, 22 Cal.3d at p. 412.) In our view appellant's reliance on Harris is misplaced; Harris supports the trial court's ruling below.
Because the accident causing Longden's injuries occurred outside the policy period State Farm did not owe Vierra a duty to indemnify him.

II

DUTY TO DEFEND
Appellants also contend State Farm had a duty to defend the underlying action even if no duty to indemnify, noting that the duty to defend is *233 broader than the duty to indemnify. (CNA Casualty of California v. Seaboard Surety Co. (1986) 176 Cal. App.3d 598, 605 [222 Cal. Rptr. 276].) Appellants repeat the well-accepted rule that "the carrier must defend a suit which potentially seeks damages within the coverage of the policy...." (Gray v. Zurich Insurance Co. (1966) 65 Cal.2d 263, 275 [54 Cal. Rptr. 104, 419 P.2d 168].)
(3a) Appellants properly note: "The insurer's obligation to defend is not dependent on the facts contained in the complaint alone; the insurer must furnish a defense when it learns of facts from any source that create the potential of liability under its policy. [Citations.]" (CNA Casualty, supra, 176 Cal. App.3d at p. 606.) Moreover, "[w]here there is doubt as to whether the duty to defend exists, the doubt should be resolved in favor of the insured and against the insurer." (Eichler Homes, Inc. v. Underwriters at Lloyd's, London (1965) 238 Cal. App.2d 532, 538 [47 Cal. Rptr. 843].)
(4a) Basically, appellants claim under these rules State Farm had a duty to defend Vierra in the underlying suit as the term "accident" was ambiguous, giving rise to potential liability. Appellants misapprehend the notion of "potential liability." (3b) Potential liability deals with whether the insurer owes coverage to the insured based upon the facts known to the insurer or facts pleaded in the complaint, even if false. (See Remmer v. Glens Falls Indemn. Co., supra, 140 Cal. App.2d at p. 90.) For example, in Saylin v. California Ins. Guarantee Assn. (1986) 179 Cal. App.3d 256 [224 Cal. Rptr. 493], the complaint alleged the liability-producing conduct occurred over a period of time, some of which fell within the policy period. On the basis of these allegations, the insurer had a duty to defend. (Id. at p. 263.) In Gray v. Zurich Insurance Co., although the complaint sought relief only on the basis of (uninsured) intentional conduct, it was possible liability of the insured could be premised on (insured) negligent conduct. The insurer therefore had a duty to defend.
(4b) Here, any potential for liability did not arise from disputed facts, but hinged on resolution of a legal question, i.e., whether the undisputed facts constituted an "accident" during the policy period. We know of no case suggesting that an insurer has a duty to defend where the only potential for liability turns on resolution of a legal question. As the court in Gray v. Zurich Insurance Co., supra, 65 Cal.2d at page 275, stated: "We look to the nature and kind of risk covered by the policy as a limitation upon the duty to defend; ..." (See also Fresno Economy Import Used Cars, Inc. v. United States Fid. & Guar. Co. (1977) 76 Cal. App.3d 272, 280 [142 Cal. Rptr. 681].) We have concluded as a matter of law that the policy did *234 not cover a risk as contended by appellants. Therefore, State Farm had no duty to defend.
The judgment is affirmed. Respondent shall recover its costs on appeal.
Martin, Acting P.J., and Best, J., concurred.
NOTES
[*] Assigned by the Chairperson of the Judicial Council.