801 P.2d 441

**Michael SHADE and Priscilla Shade, husband and wife, Plaintiffs/Appellants,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY (USF & G), a corporation, Defendant/Appellee.**

No. 2 CA–CV 89–0171.

Court of Appeals of Arizona, Division 2, Department A.

May 10, 1990.

Reconsideration Denied June 27, 1990.

Review Denied Dec. 18, 1990.

Ettinger & Deckter, P.C. by Elaine W. Bevans and Louis L. Deckter, Tucson, and McGuinn, Hillsman & Palefsky by John A. McGuinn, San Francisco, Cal., for plaintiffs/appellants.

Kimble, Gothreau & Nelson, P.C. by William Kimble and David F. Toone, Tucson, for defendant/appellee.

## OPINION

HOWARD, Judge.

Michael and Priscilla Shade appeal from the trial court's order granting of summary judgment in favor of appellee, finding that coverage did not extend beyond the period set forth in the insurance policy issued to Douglas and Constance Jewell. For the following reasons, we affirm.

## FACTS

Michael Shade was severely injured in a motorcycle accident in June 1979. The Shades instituted suit against several defendants on various negligence theories. All defendants prevailed except the Jewells who failed to appear. The Jewells, owners of Jewell's Cycle City, were allegedly negligent in repairing the motorcycle which caused Michael Shade's accident. A $5.5

million default judgment was entered against the Jewells.

The Jewells had obtained a garagekeepers liability insurance policy from appellee, United States Fidelity and Guaranty Company (USF & G), shortly after they purchased Cycle City in April or May 1976. The policy (policy 1) was transferred to the Jewells from the previous owner of Cycle City, Bill Yarbrough.[1] In March 1978, policy 1 expired and USF & G issued a second policy (policy 2) to the Jewells but cancelled it in November 1978 for non-payment of premiums. In January 1979, the Jewells turned Cycle City back to Yarbrough. USF & G issued a garage liability policy (policy 3) to Yarbrough in February 1979. Hesselink handled all of Cycle City's insurance needs until he sold his agency to Mueller Insurance Agency in October 1978.

USF & G refused to defend or indemnify the Jewells against the Shades' claims because the accident occurred outside the periods of coverage. The Jewells did not defend themselves in the case. After a default judgment was entered, the Jewells executed an assignment to the Shades of any potential claims against USF & G in exchange for a covenant not to execute against them personally.

The Shades filed a lawsuit against USF & G in the United States District Court for the District of Arizona. After they amended the complaint to join Hesselink as a defendant, the case was removed from federal court and was assigned to Judge J. Richard Hannah in the Pima County Superior Court. The Shades filed a second amended complaint that joined Mueller Insurance Agency as a defendant. Subsequently, summary judgment was granted dismissing Hesselink and Mueller Insurance from the action because they were not privy to the Shade–Jewell assignment.

A jury trial was held in July 1987. At the conclusion of their case, the Shades moved to amend their complaint for a third time. In addition to previously alleged claims based on policy 3, the policy issued

to Yarbrough in February 1979, they sought to include allegations based on policies 1 and 2, the policies covering the Jewells while they operated the business. Judge Hannah granted the motion and simultaneously ordered a mistrial, sua sponte. Appellees then moved for a directed verdict which the court denied.

On retrial, Judge Hannah recused himself from the case, and it was subsequently assigned to Judge Carruth. USF & G moved for summary judgment on the issue of coverage. The court granted the motion and this appeal followed.

## ISSUES

The Shades contend that the trial court erred in granting summary judgment because a material issue of fact exists as to whether the Jewells had a reasonable expectation of coverage beyond the stated policy period and whether USF & G was negligent in describing policy terms in the Cycle City policies and in failing to defend the Jewells. The Shades also contend that the trial court abused its discretion in granting summary judgment in favor of USF & G because it mirrored its motion for directed verdict previously denied by Judge Hannah.

## DISCUSSION

1. *Reasonable Expectation.*

■ The Shades contend that the Jewells had a reasonable expectation of coverage within the meaning of *Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co.,* 140 Ariz. 383, 682 P.2d 388 (1984), during the time that the alleged negligent act occurred, even if the policies had expired before Michael Shade's accident. Douglas Jewell stated that he never read his policies but that through discussions with Hesselink, he believed that the policies covered any negligent repairs made to the motorcycle that contributed to Shade's accident. Viewing the evidence most favorably towards the Shades' posi-

1. A new policy was not actually issued by USF & G to the Jewells. Lamar Hesselink, USF & G's Sierra Vista agent, merely crossed out Yar- brough's name and substituted the name Jewell's Cycle City as the insured in the policy.

tion, we find no material question of fact exists as to Jewell's reasonable expectation of coverage under the policies. *Gulf Insurance Co. v. Grisham,* 126 Ariz. 123, 613 P.2d 283 (1980).

Policy 1 which was transferred to the Jewells provided, in part, as follows:

I. GARAGE LIABILITY

\*   \*   \*   \*   \*   \*

The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of

G.  bodily injury

\*   \*   \*   \*   \*   \*

to which this insurance applies, caused by an occurrence and arising out of garage operations ... and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury....

Policy 2 provided:

The Company will pay on behalf of Insured all sums which the Insured shall become legally obligated to pay as damages because of

G.  bodily injury

\*   \*   \*   \*   \*   \*

to which this insurance applies, caused by an occurrence....

\*   \*   \*   \*   \*   \*

DEFINITIONS:

"bodily injury" means bodily injury, sickness or disease sustained by any person which occurs *during the policy* period ...

"occurrence" means an accident....

(Emphasis added.)  The policy provisions as set forth are cited from appellant's brief because portions of the copy of policy 2 on record is illegible.  USF & G does not contest the accuracy of the provisions; therefore we accept them as true.

*Darner* recognized that an insured's reasonable expectation of coverage may be enforceable, even when contrary to the pol-

icy's unambiguous terms.  See also *Gordinier v. Aetna Casualty & Surety Co.,* 154 Ariz. 266, 742 P.2d 277 (1987).  The Restatement (Second) of Contracts § 211(3) (1979) limits the application of the doctrine of reasonable expectations to situations where the other party has reason to believe that the party manifesting such assent would not do so *if he knew* that the writing contained a particular term.  *Darner,* 140 Ariz. at 391, 682 P.2d at 397.  Further, comment (f) to § 211(3) provides:

> Such a belief or assumption may be shown by the prior negotiations or inferred from the circumstances.  Reason to believe may be inferred from the fact that the term is *bizarre or oppressive,* from the fact that it eviscerates the non-standard terms explicitly agreed to, or from the fact that it eliminates the dominant purpose of the transaction.

(Emphasis added.)  As we have said before, a *Darner* issue is not raised simply by putting the insured on the stand and asking him, "Did you reasonably expect that you would be covered?"  *State Farm Fire & Casualty Company v. Powers,* 163 Ariz. 213, 215, 786 P.2d 1064 (Ct.App.1989).

The record is devoid of any evidence supporting the Shades' theory of reasonable expectation.[2]  The evidence shows that Douglas Jewell received accurate information from Hesselink whenever he inquired about his coverage.  Moreover, there is no evidence showing that his belief regarding coverage was any different from the clearly stated terms found in the policies.  In response to a question concerning whether he and Hesselink ever discussed coverage if an accident were to occur after the policies expired or after he terminated his business, Jewell stated, "I don't recall a conversation of that nature."

The Shades base their argument on the following testimony describing Jewell's reasonable expectation around the time he and his wife purchased Cycle City from Yarbrough in April or May 1976:

> he had a reasonable expectation of coverage.

---

**2.**  Shade does not contend that Jewell was covered under the language of the policies, only that

A: ... I asked Mr. Hesselink if I did have that. And to make sure that we were both talking about the same type of coverage, I gave an example of—of things that might happen. And was I covered.

Q: Will you tell us the examples you gave Mr. Hesselink when you asked him if you had this garage liability coverage.

A: I gave him an example of a—if there was an oil plug falling out and if there was any damage or personal injury to the individual, would I be covered if we had done the work on it.

And he said yes, I would.

\* \* \* \* \* \*

Q: Now, did you ask Mr. Hesselink specifically if the policy that you had bought but had not seen yet, if it specifically was garage liability coverage?

A: Yes, I asked him if it had that particular part of it, and, like I said, I gave him an example of what I was talking about.

Hesselink also acknowledged this representation as follows:

> I told him he would be covered for—in the event that the operator of the motorcycle had an accident when he left, he had insurance for that, yes, sir.

This evidence does not lend any support to Shade's contentions that 1) Jewell believed he had liability coverage for accidents arising after policy 1 or 2 had expired, 2) Hesselink was aware that Jewell misconceived the clearly provided term of coverage, or 3) Hesselink misrepresented the scope of coverage to Jewell. Further, the policies at issue contain coverage terms which are otherwise standard, not "bizarre or oppressive." Without evidence to the contrary, it is unreasonable to assume Hesselink *knew* that Jewell *thought* coverage would extend indefinitely. Nothing that Hesselink said to Jewell and nothing that Jewell said to Hesselink supports a reasonable expectation of coverage. If we per-

mitted the Shades to prevail in this matter, then we would in effect expose insurance companies like USF & G to indemnity actions arising out of accident liability which may not occur for 10, 15 or even 20 years after a policy had expired. Such a result would surely be oppressive and bizarre.

The Shades raise no issue that would warrant a departure from the coverage terms provided either in policy 1 or 2. Therefore, we find the court properly entered summary judgment in favor of USF & G. Because we find no misrepresentations made by Hesselink and no merit to their reasonable expectation argument, the Shades' contentions based on estoppel, reformation, fraud and duty to defend fail as well.

## 2. *Negligence.*

■ The Shades contend that USF & G had a duty to draft its garage liability policies so that they could easily be understood by the average garage operator. As we understand the argument, they assert that Cycle City's coverage provisions were not conspicuously apparent to Douglas Jewell, even though he had not read the policies, and therefore, they raised a material issue of fact as to whether USF & G was negligent in drafting the provisions. The Shades claim that USF & G had notice of its duty, citing *Sylla v. United States Fidelity & Guaranty Co.*, 54 Cal.App.3d 895, 127 Cal.Rptr. 38 (1976),[3] in support of this proposition.

The Shades' argument is fatally flawed. Policy 1, the policy that was transferred to the Jewells was issued on March 15, 1975, more than nine months before *Sylla* was decided. Notice based on that case was thus not possible. Further, policy 2 clearly states that the insured is covered for bodily injury occurring *during the policy period.* Having found no issue of fact, we find that

---

**3.** *Sylla* interpreted the term "occurrence," which is defined as "accident" under the policy, to mean an occurrence at the time of the accident or *at the time of the wrongful act.* See also *Oil Base, Inc. v. Continental Casualty Co.,* 271 Cal. App.2d 378, 76 Cal.Rptr. 594 (1969). California courts have generally held *Sylla* and *Oil Base* to

be contrary to the majority of appellate decisions. *State Farm Mutual Automobile Insurance Co. v. Longden,* 197 Cal.App.3d 226, 242 Cal. Rptr. 726 (1987); *Employers Casualty Co. v. Northwestern National Insurance Group,* 109 Cal.App.3d 462, 167 Cal.Rptr. 296 (1980) (listing supporting cases).

**210**

the court properly entered summary judgment in favor of USF & G.

### 3. *Summary Judgment.*

 Citing *Mozes v. Daru,* 4 Ariz.App. 385, 420 P.2d 957 (1966), the Shades' final contention is that Judge Carruth erred in granting USF & G's motion for summary judgment because Judge Hannah had previously denied its motion for directed verdict on the same facts. The court in *Mozes* condemned "horizontal appeals," the practice of bringing the same motion before different superior court judges in the hope of finding one who will rule in one's favor. The case also states that there is no iron-clad rule that absolutely precludes renewal of a prior motion or making a subsequent motion for the same relief, and that no purpose would be served by forcing a case to trial once it clearly appears that summary judgment should be granted. That is the case here.

Affirmed.

ROLL, P.J., and HATHAWAY, J., concur.