[No. B006048. Second Dist., Div. Three. Sept. 25, 1985.]

LINDA J. McCURTER, Plaintiff, Cross-defendant and Appellant, v.
BARBARA T. OLDER et al., Defendants and Appellants;
EDWIN GALLAGHER, Defendant, Cross-complainant and Appellant;
CLYDE COLLINS, Cross-defendant and Appellant.

ROBERT T. OLDER, Plaintiff, Cross-defendant and Appellant, v.
LINDA J. McCURTER et al.,
Defendants, Cross-complainants and Respondents;
EDWIN GALLAGHER et al., Cross-defendants and Respondents.

584

**COUNSEL**

Glickman & Glickman and David R. Glickman for Plaintiff, Cross-defendant and Appellant, Cross-defendant and Appellant and Defendants, Cross-complainants and Respondents.

Hahn & Cazier, Hahn, Cazier & Smaltz, Julian A. Pollok and Jeffrey N. Brown for Defendants and Appellants, Defendant, Cross-complainant and Appellant, Plaintiff, Cross-defendant and Appellant and Cross-defendants and Respondents.

OPINION

DANIELSON, J.—

STATEMENT OF THE CASE

The case at bench is comprised of an appeal by the plaintiff from the judgment in favor of the defendants on her complaint for money damages for fraud, negligent misrepresentation, and constructive fraud, and several cross-appeals by the defendants and cross-complainants from the judgment of the court and from various orders made after judgment. The case below and the issues raised on appeal result from controversies which arose out of the purchase and sale of a parcel of undeveloped land along the Mojave River in San Bernardino County.

FACTUAL AND PROCEDURAL BACKGROUND[1]

█ In reviewing the evidence we are bound by the established rules that all factual matters will be viewed most favorably to the prevailing party, that all questions of credibility are within the province of the trier of fact, that the appellate court ordinarily looks only at the evidence supporting the successful party and disregards the contrary showing, that all conflicts must be resolved in favor of the judgment appealed from and that the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence contradicted or uncontradicted, which will support the conclusion reached by the trier of fact. (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]; *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480].)

In early 1976, plaintiff Linda J. McCurter (McCurter) and her husband Clyde Collins (Collins) went to Hesperia, California, seeking to buy a ranch of about 200 acres. The ranch was to be acquired in McCurter's name. Collins apparently acted for McCurter throughout the transaction. They contacted defendant Edwin F. Gallagher (Gallagher), a real estate broker who showed them several pieces of property, none of which they wished to buy. They told Gallagher that if he found a ranch which he thought would be suitable for them, they would be interested in purchasing it.

---

[1] In accordance with California Rules of Court, rule 12(a), we have ordered the entire superior court file transmitted to us to augment the record on appeal.

In May 1977, Gallagher called McCurter and Collins at their home in Burbank, California, and invited them to see a piece of property. McCurter and Collins drove to Helendale and met Gallagher who introduced them to defendant Lee Black (Black), a real estate salesman working with Gallagher.

Black and Gallagher showed McCurter and Collins the property to which Gallagher had referred. They drove around the property, and on to a nearby hill so that they could look down upon and see the layout of the property. They pointed out the boundary lines which were the center-line of the Mojave River, the Southern Pacific Railroad tracks and landmarks on two corners consisting of a school house and a church. There were no buildings on the 258 acres, some of which were in alfalfa. The river was dry.

McCurter and Collins told Gallagher and Black that they wanted to use the property for farming. Black and Gallagher pointed out the features of the property to McCurter and Collins and told them that there was a flood control easement which extended back 800 feet from the center-line of the river, which was one of the boundaries of the property, and that, therefore, about one-half of the property was not useable for the purpose of erecting buildings and that some types of fences were restricted. However, the land within that easement could be used for agricultural purposes such as the growing of crops and trees. The portion of the property lying outside of the 800-foot easement could be used for any agricultural purpose. They pointed out to McCurter and Collins that there were several wells on the property, all of which were inactive, but that the seller, Older, would be willing to supply water for that growing season.

Robert T. Older represented his wife, Barbara T. Older, throughout the transaction.

On a later date Black, alone, took McCurter and Collins over the property a second time and again pointed out the features of, and explained the easements on, the property.

On May 31, 1977, McCurter signed a real estate purchase contract and receipt for deposit agreeing to purchase the property. That document, on a printed form, provides in paragraph 2: *"Title is to be free of liens, encumbrances, easements, restrictions, rights and conditions of record or known to Seller, other than the following: as above written Seller shall furnish to Buyer at Seller expense a standard California Land Title Association policy issued by Safeco Title Co. Company, showing title vested in Buyer subject only to liens, encumbrances, easements, restrictions, rights and conditions of record as set forth above. If Seller fails to deliver title as herein provided,*

*Buyer at his option may terminate this agreement and any deposit shall thereupon be returned to him."* (Italic indicates printed text.) The three words "as above written" were handwritten on the printed form.

The paragraph which is "above" paragraph 2 is paragraph 1, which sets forth the terms of the agreement of the parties for financing the purchase and sale of the property, including a note secured by a trust deed which would become an encumbrance on the property when recorded. That paragraph provided in relevant part: *"1. Buyer will deposit in escrow with* Safeco Title *the balance of purchase price as follows:* $40,000 Down payment as follows . . . Buyer to execute a note and deed of trust in favor of Seller in the amount of 140,000 payable . . . All irrigation equipment pipe lines and existing water rights are included in the purchase price . . ."* (Italic indicates printed text.)

Escrow instructions dated June 7, 1977, were later signed by McCurter and the seller and stated that the property being sold was "Subject to: . . . Covenants, conditions, reservations, restrictions, easements and rights of way of record." Collins testified that he had read the totality of the escrow instructions before his wife, McCurter, signed them and that he assumed that McCurter had sought his advice before she signed them. Black testified that he was sure he went over the escrow instructions with Collins and that he thought he went over them with McCurter (Mrs. Collins) too, before they were signed, and McCurter signed them of her own free will.

A preliminary title report dated July 6, 1977, was received before close of escrow and Black and Gallagher went over it with McCurter and Collins. They discussed the easements and other entries in the preliminary title report for about an hour and a half. That report reflected the flood control easement and other items affecting the title.[2]

By letter dated July 20, 1977, before the escrow was closed, Robert T. Older, one of the sellers, promised to provide water for the remainder of the season.

Escrow closed, and the property was sold on July 22, 1977.

In February or March, 1978, flooding took place in the Mojave River and some bridges and roadways were washed away. Collins went out to look at

---

[2]The recorded document of easement provides, after the granting portion, and in pertinent part: "RESERVING UNTO GRANTOR HEREIN: 1. The right to occupy and use the above described property for agricultural use of any kind, without, however, the right to use said property for purposes of human habitation, or for the placement, location, or construction of any buildings or structures except wells and water works facilities as hereinafter set forth, and stranded wire and post fences."

it and commented to a workman that he was glad he did not have anything planted in the river bottom because it would have been washed away. The workman told him that he couldn't plant anything there anyhow because of the flood control easement. Collins testified that that was how he became aware of the easement. Collins later asked a neighbor whether what the workman had told him was correct, and tried to call the flood control district to inquire, but never reached them. He made no other inquiry.

On April 28, 1978, McCurter filed her unverified complaint for damages for fraud and negligence against the Olders, Ed Gallagher and Lee Black, alleging that defendants had sold her property which they falsely represented to be free of liens, encumbrances, easements, etc., and that she could freely use in its entirety for agricultural purposes, as she saw fit, without restrictions, and that she first learned of easements on the property after the sale was completed, when she received the title insurance policy, which listed various encumbrances, easements, etc. McCurter's complaint included three counts of actual fraud, negligent misrepresentation and constructive fraud, alleging that defendants Black and Gallagher, real estate brokers, were her agents and had the obligations of fiduciaries to her and had breached those obligations by not disclosing to her that there were easements which restricted her right to use the property freely and as she saw fit and thus they were liable to her for constructive fraud. McCurter prayed for general damages of $100,000 and punitive damages of $50,000. McCurter predicated her complaint and her case largely upon the wording of paragraph 2 of the deposit receipt. The defendants answered and Gallagher cross-complained against McCurter and Collins for payment of a promissory note given for his real estate broker's commission, $9,000, interest thereon, and for attorneys' fees, to which McCurter and Collins filed an answer denying indebtedness because of Gallagher's alleged fraud. On January 4, 1979, Robert T. Older filed a separate action against McCurter and Collins for $3,440.03, the alleged cost of the water he had supplied to McCurter and Collins. McCurter and Collins then filed an answer to Older's complaint and a cross-complaint against the Olders, Gallagher and Black which, in effect, repleaded their complaint filed April 24, 1978.

The actions were consolidated for trial.

At the trial Black, Gallagher and Older all testified that despite the wording of the first sentence of paragraph 2 of the deposit receipt their intention and understanding was that the property was being sold subject to liens, encumbrances, easements, restrictions and conditions of record. They pointed out in their testimony that paragraph 2 also called for the furnishing of a title policy and that, therefore, there would be a preliminary title report, which would set forth the encumbrances of record and that paragraph 2 also

provided if the Seller failed to deliver title as agreed the Buyer, at his option, could terminate the agreement and have his deposit refunded.

James Kindig, former assistant flood control engineer for San Bernardino County, testified that the land within the flood control easement could be used for agricultural purposes, growing crops such as barley, alfalfa, and trees if planted in such pattern as to meet the approval of the flood control district. Buildings would not be permitted, but other agricultural uses would be all right so long as they did not constitute a hazard by impeding the flow of flood waters. Fences which would not impede flood waters could be placed in the flood plain, but possibly not chain link or square woven fencing, unless it were mounted on break-away type of fence posts.

Defendant Robert Older testified that he had been farming in the immediate area for 15 years and that growing crops such as barley and alfalfa in the river valley was common. After the deposit receipt was signed, but before close of escrow, Older had a long discussion with Collins and explained to Collins in detail what the land in the flood plain could, and could not, be used for. The conversation included the growing of fruit trees, cattle grazing and Collins' idea for developing some wells for using wind power. Older discussed with Collins the boundaries of the property and the flood control easement, and explained to Collins how he could use the part of the property which was subject to the easement; the growing of crops and trees, and the availability of water. Older also testified that he had been using three strand barbed-wire fencing, with posts, in the flood control right-of-way, and that he doubted that chain link fence could be used. Older didn't consider chain link to be a farm fence in the Mojave River area; the commonly used fences there are stranded wire and post.

Additional facts will be set forth where relevant in the discussion below.

After a five-day trial by the court, judgment was entered on December 21, 1983: against plaintiff McCurter on her complaint; for Edwin Gallagher and against McCurter and Collins for the unpaid balance ($5,000) of his note for broker's fees, with interest, and for attorney's fees; against Robert T. Older on his complaint in the consolidated action (for cost of water); and for costs awarded to the Olders, Black and Gallagher.

On January 6, 1984, plaintiff and cross-defendants McCurter and Collins served and filed a notice of appeal from the judgment of December 21, 1983.

Defendants Older, Black and Gallagher filed a memorandum of costs and disbursements on January 10, 1984 and on January 17, 1984, McCurter and

Collins filed and noticed a motion to tax costs, which was heard on February 3, 1984. The court's ruling was reflected in a minute order striking and reducing some items on the cost bill.

On February 29, 1984, Robert T. Older cross-appealed from the judgment of December 21, 1983, denying recovery on his complaint for the cost of water he had supplied to McCurter and Collins; defendants Robert and Barbara Older, Black and Gallagher appealed from the order after judgment granting the motion of McCurter and Collins to tax costs as to witness fees; defendant Barbara Older appealed from the order granting the motion to tax costs as to attorneys' fees incurred by her; and defendant Edwin Gallagher appealed from the order granting the motion to tax costs as to attorneys' fees incurred by him on his cross-complaint.

### THE APPEAL OF PLAINTIFF AND APPELLANTS McCURTER AND COLLINS

*Contentions*

Plaintiff and appellant McCurter contends:

1. The trial court's failure to find on a material issue [constructive fraud] pursuant to a specific request compels reversal.

2. Defendant Robert T. Older, as principal of defendants Black and Gallagher, is jointly liable for their constructive fraud and, therefore, the trial court erred in granting Older's motion for judgment at the close of plaintiff's case.

3. The trial court erred in granting judgment for defendants because there was insufficient evidence to support the conclusion in the court's statement of decision that defendants had not made negligent misrepresentations.

*Discussion*

 McCurter's principal contention on appeal is that the trial court committed reversible error by not making a finding of fact on the issue of constructive fraud even though McCurter had requested such a finding. This contention is correct and will require a reversal of the judgment appealed from.

Findings of fact and conclusions of law have been governed by section 632, Code of Civil Procedure.[3] In 1981 the Legislature rewrote section 632,

---

[3]Statutory references hereafter are to the Code of Civil Procedure unless otherwise specified.

effective January 1, 1982, to read in pertinent part as follows: "In superior, . . . courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required. Upon the request of any party appearing at the trial, made within 10 days after the court announces a tentative decision, . . . the court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial. The request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision. After a party has requested such a statement, any party may make proposals as to the content of the statement of decision."

The Legislature also made related and conforming changes in other sections of that code.

Rule 232 of California Rules of Court[4] relating to intended decisions, findings and judgment was also amended following the rewriting of section 632.[5]

■ The effect of the 1981 legislation was to abolish the requirement for findings of fact and conclusions of law and to substitute a less formal procedure requiring the court to issue a statement of decision, when duly requested, explaining the factual and legal basis for its decision as to each of the principal controverted issues at the trial.

There have been few reported decisions interpreting present section 632. However, decisions on findings of fact and conclusions of law based upon former section 632 are useful in that former case law provides guidance in areas not covered by the new statute and rules governing statements of decision. (See 7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 368, pp. 374-375.) ■ " 'It is a generally accepted principle that in adopting legislation the Legislature is presumed to have had knowledge of existing domestic judicial decisions and to have enacted and amended statutes in the

---

[4]References to rules hereafter are to California Rules of Court unless otherwise specified.

[5]The amendments to rule 232, effective January 1, 1982, caused it: (1) to conform to and implement the new section 632; (2) to require that "[a]ny proposals as to the content of the statement of decision . . . be made within 10 days of the date of request for a statement of decision . . . ." (rule 232(b)); (3) to require the court to prepare, or a party designated by it to prepare, serve and submit to the court, a proposed statement of decision and a proposed judgment within 15 days after the expiration of the time for filing proposals as to the content of the statement (rule 232(c)); (4) to authorize any party affected by the judgment to serve and file objections to the proposed statement of decision or judgment within 15 days after the proposed statement and judgment have been served (rule 232(d)); (5) to authorize the court to ". . . order a hearing on proposals or objections to a proposed statement of decision or the proposed judgment . . ." (rule 232(f)); and (6) to prescribe other procedures not relevant to the case at bench.

light of such decisions as have a direct bearing upon them. . . .' [Citations.]" (*Estate of McDill* (1975) 14 Cal.3d 831, 839 [122 Cal.Rptr. 754, 537 P.2d 874]; *People* v. *Olsen* (1984) 36 Cal.3d 638, 647 [205 Cal.Rptr. 492, 685 P.2d 52].) "[T]he Legislature is presumed to be aware of existing judicial practices and interpretations when it enacts a statute." (*People* v. *Carrasco* (1981) 118 Cal.App.3d 936, 945 [173 Cal.Rptr. 688].)

"It is assumed that whenever the legislature enacts a provision it has in mind previous statutes relating to the same subject matter. [Fn. omitted.] In the absence of any express repeal or amendment, the new provision is presumed in accord with the legislative policy embodied in those prior statutes. [Fn. omitted.]" (2A Sutherland, Statutory Construction (4th ed. 1984 Revision) § 51.02, p. 453.)

Thus the case law on findings and conclusions under former section 632 can be applied by analogy to determine issues raised under present section 632.

The trial of the case at bench lasted five days, and was submitted on July 20, 1983. On August 25, 1983, the court announced its tentative decision by minute order, and by memorandum of intended decision, both of which were mailed to all counsel by the clerk. On August 31, 1983, McCurter and Collins served and filed their "Request for Findings of Fact, Conclusions of Law And Request For Statement Of Decision."

A proposed "Statement of Decision" and a proposed "Judgment," were served and filed by counsel for defendants and cross-complainants on September 14, 1983. That described Statement of Decision was signed by the trial judge and was filed on November 14, 1983 and copies were mailed by the clerk to all counsel on that date. The described Judgment was signed by the trial judge and was filed on December 21, 1983.

In their request for a statement of decision, which was timely served and filed, McCurter and Collins specified the issues as to which they requested a statement of decision including, inter alia, (1) the status as to each other, and as to McCurter and Collins, of defendants Older, Black and Gallagher, and each of them, and (2) "[w]hether or not the defendants were guilty of actual fraud, constructive fraud, negligent representation and negligence and the ground for such finding."

The statement of decision issued by the court did not in any respect address the issue of whether the defendants were guilty of constructive fraud; nor did it address the issue of what was the status as to each other and as to McCurter and Collins of the defendants Older, Black and Gallagher.

The question of whether defendants Older, Black and Gallagher had committed constructive fraud against plaintiff was clearly a principal controverted issue at the trial. The third cause of action charged and was based upon constructive fraud. The allegation of constructive fraud were denied in defendants' answer.

The third cause of action also alleged that the defendants were the agents of each other, acting within the course and scope of their agency; that they were all licensed real estate brokers and that defendants Black and Gallagher represented plaintiff McCurter in the underlying transaction and as such had an affirmative duty to make full disclosure to plaintiff of all facts which might materially affect her right and interest in the property, but they had not done so.

A determination of the existence and the extent of the alleged agency relationship between the parties was essential to a determination of whether defendants had committed constructive fraud against plaintiff McCurter.

Evidence was received at the trial both to establish and to controvert the allegations of constructive fraud. Substantial evidence was introduced which, if believed by the trial court, would have been sufficient to support a finding in favor of appellants, that there was constructive fraud.

Section 632 requires that the trial court issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial, when timely requested to do so by any party appearing at the trial.

While a trial court issuing a statement of decision is required only to state ultimate rather than evidentiary facts it must, nevertheless, make such a statement. What is required is an explanation of the factual and legal basis for the court's decision as to the principal controverted issues at trial which are specified in the party's request for statement of decision. Where the court fails to make the required explanation reversible error results. (*Miramar Hotel Corp.* v. *Frank B. Hall & Co.* (1985) 163 Cal.App.3d 1126, 1129-1130 [210 Cal.Rptr. 114]; *Wolfe* v. *Lipsy* (1985) 163 Cal.App.3d 633, 643-644 [209 Cal.Rptr. 801]; *People* v. *Casa Blanca Convalescent Homes, Inc.* (1984) 159 Cal.App.3d 509, 524 [206 Cal.Rptr. 164].)

The failure of a court to explain the factual and legal basis for its decision on a principal controverted issue, when properly requested by a party, is ". . . error of a most serious, prejudicial, and reversible nature . . .," provided " 'that there was evidence introduced as to such issue and the

evidence was sufficient to sustain a finding in favor of the party complaining.' [Citation.]'' (*San Jose etc. Title Ins. Co.* v. *Elliott* (1952) 108 Cal.App.2d 793, 801 [240 P.2d 41]; to the same effect, see *Guardianship of Brown* (1976) 16 Cal.3d 326, 333 [128 Cal.Rptr. 10, 546 P.2d 298]; *In re Marriage of Davis* (1983) 141 Cal.App.3d 71, 75 [190 Cal.Rptr. 104]; *Employers Casualty Co.* v. *Northwestern Nat. Ins. Group* (1980) 109 Cal.App.3d 462, 473-474 [167 Cal.Rptr. 296]; and see authorities collected at 7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 386, pp. 394-395.)

Appellants did not object to the proposed statement of decision which had been prepared for the court by counsel for the defendants, nor did they offer any proposals as to the content of the statement, as authorized by section 632 and rule 232. However, this inaction by appellants does not preclude them, on appeal, from attacking the court's failure to find on a principal controverted issue when a timely request so to do has been made.

The failure to object to a proposed statement of decision is not a waiver of the failure of the court to explain the factual and legal basis for its decision on such a principal controverted issue. (*San Jose etc. Title Ins. Co.* v. *Elliott, supra,* 108 Cal.App.2d 793, 802-803. "[T]he failure to find on a material issue is too fundamental a defect to be waived by failure to object or to propose amendments to the findings in the trial court. The rule is that failure to object to the findings is not a waiver of a failure to find on a material issue. [Citation.]'' (*Employers Casualty Co.* v. *Northwestern Nat. Ins. Group, supra,* 109 Cal.App.3d 462, 474; 7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 386, p. 395, and see authorities collected there.)

The losing party's failure to submit proposals as to the content of the statement of decision, or objections to the content of the proposed statement of decision, does not excuse the court from making its own statement of decision if that submitted by the prevailing party does not accurately reflect the court's factual determinations. (Cf. *In re Marriage of Davis, supra,* 141 Cal.App.3d 71, 76.)

In view of our disposition of this case we need not reach the other contentions made by appellants McCurter and Collins.

THE CROSS-APPEAL OF DEFENDANT, PLAINTIFF,
AND CROSS-APPELLANT ROBERT T. OLDER

*The Case*

In the consolidated action Robert T. Older brought a civil action against McCurter and Collins for breach of the contract between them pursuant to

which Older agreed to furnish water to McCurter and Collins for agricultural purposes, to be used on the land which McCurter was purchasing from Barbara T. Older, and McCurter and Collins agreed to pay Older for the water at Older's cost.

*The Testimony at Trial*

At the trial Collins testified that McCurter and Collins did in fact use Older's water for about three months, that they had not paid Older for the water because he thought that Older's bill was too high, that he admitted that they owed Older for the water, and that he "felt" that he owed ". . . about $450 to $500 a month. . . ." for the three months.

Robert T. Older testified as to the agreement and that he had supplied water pursuant to the agreement, that McCurter and Collins had agreed to pay him his cost for the water, that he had calculated the cost of the water to be $3,440.39 and had billed Collins for that amount and had not been paid. Older had prayed for $3,440.03, together with interest from March 10, 1978, in his complaint.

*Discussion*

█ The record establishes that there was a contract between the parties pursuant to which Older furnished agricultural water to McCurter and Collins and that McCurter and Collins had agreed to pay Older for the water and the evidence is uncontradicted that they, McCurter and Collins, received and used the water. It was error, therefore, as a matter of law, for the trial court to render judgment "[t]hat Robert T. Older shall take nothing by way of his complaint in the consolidated action, . . .".

Older appealed from the judgment to that effect. That portion of the judgment must be reversed.

### THE APPEALS FROM ORDERS AFTER JUDGMENT GRANTING MOTIONS TO TAX COSTS

Defendants Older, Black and Gallagher also appealed from orders made after judgment granting the motions of McCurter and Collins to tax costs.

Inasmuch as the judgment must be reversed and, except as otherwise expressly provided, costs are allowed of course to the prevailing party in civil actions in the superior court (§ 1032) the order allowing costs and taxing costs must be vacated.

## DECISION

The judgment is reversed.

The order allowing costs and taxing costs is vacated.

Each party is to bear his or her own costs in this appeal.

Arabian, J., concurred.

**LUI, Acting P. J.**—I concur in the result.

The essential question presented in this appeal deals with the obligation of the trial court to make an adequate statement of decision which covers all material issues of each cause of action pled and tried. The statement of decision entered below is inadequate as to the cause of action for constructive fraud.

Upon the request of any party to an action, the trial court is required to prepare a statement of decision under the circumstances set forth in section 632 of the Code of Civil Procedure.

It is obvious that a prevailing party would be motivated to assist the trial court in preparing an adequate and complete statement of decision.

Equally, it is highly improbable that a losing party would have any motivation to propose changes in a statement of decision which the losing party believes to be inadequate, choosing instead to raise the question of the adequacy of the statement on appeal. There is nothing improper for a losing party to take this position, and counsel for McCurter pursued this strategy below as her vigorous advocate.

Neither section 632 of the Code of Civil Procedure nor rule 232 of the California Rules of Court places any obligation on the losing party, such as the appellant herein, to assist the court in making a proper statement of decision.

Based on the decision in *Miramar Hotel Corp.* v. *Frank B. Hall & Co.* (1985) 163 Cal.App.3d 1126 [210 Cal.Rptr. 114], I concur in the reversal of the portion of the judgment pertaining to appellant McCurter's complaint.

I also concur in the reversal of the portion of the judgment pertaining to respondent Older's complaint and the decision to vacate the orders concerning costs.

A petition for a rehearing was denied October 24, 1985, and the petition of appellants Olders, Gallagher and Black for review by the Supreme Court was denied January 23, 1986. Lucas, J., did not participate therein.