[No. A041869. First Dist., Div. Two. July 31, 1991.]

MARSHA R. REBNEY et al., Plaintiffs and Respondents, v.
WELLS FARGO BANK, N.A., Defendant and Respondent;
MANUEL GLENN ABASCAL, Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts III(B) and III(C).

COUNSEL

Manuel Glenn Abascal, in pro. per., Kathy Shull Abascal, Ralph Santiago, Gary J. Near, Philip Neumark and Stephen Kaus for Appellant.

David B. Baum, Sidney M. Wolinsky, Rosen, Bien & Asaro, Sanford Jay Rosen, Adela B. Karliner and Katherine Sher for Plaintiffs and Respondents.

Heller, Ehrman, White & McAuliffe, Weyman I. Lundquist, Ida O. Abbott and Brian P. Brosnahan for Defendant and Respondent.

OPINION

**BENSON, Acting P. J.—**

I. INTRODUCTION

This appeal by Manuel Glenn Abascal challenges an allocation of attorney fees upon settlement of class action litigation arising from the assessment of various checking account fees by Wells Fargo Bank, N. A., and Crocker National Bank. We previously affirmed a judgment approving the settlement in *Rebney v. Wells Fargo Bank* (1990) 220 Cal.App.3d 1117 [269 Cal.Rptr. 844]. In the present appeal we hold that on a motion for attorney fees in class action litigation, the trial court need not issue a statement of decision under

Code of Civil Procedure section 632; the record need only indicate that fees were awarded under the "lodestar" or "touchstone" method.

## II. BACKGROUND

Under the terms of the settlement, $3.4 million was to be divided among numerous attorneys, including counsel for the class representatives (class counsel) and Abascal, who represented a group of objectors to the settlement. The court appointed a referee to determine the fees. Class counsel sought fees and costs in the sum of $3,100,489, while Abascal requested $763,960. The referee denied Abascal's request for an evidentiary hearing on the fee question and for discovery of the following: contemporaneous time records for the present case, time records for any other checking account fee actions, documents used to prepare time records, and certain fee agreements between counsel. The referee subsequently awarded $2,277,800 to class counsel, $170,000 to Abascal, and the remainder to the other attorneys.

Abascal moved for judicial review of the referee's order. After reviewing the record and conducting a hearing, the trial court issued a "statement of decision and order," in which the court reduced class counsel's award to $2,197,000, increased Abascal's award to $188,000, and adjusted several of the awards to other counsel.

The statement of decision explained that attorney fees were awarded according to the "lodestar" or "touchstone" approach, in which the court calculates base amounts from a compilation of time spent and reasonable hourly compensation of each attorney and then may adjust the base amounts in light of various factors. (See *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1294 [240 Cal.Rptr. 872, 743 P.2d 932]; *Serrano v. Priest* (1977) 20 Cal.3d 25, 48-49 [141 Cal.Rptr. 315, 569 P.2d 1303]; *Mandel v. Lackner* (1979) 92 Cal.App.3d 747, 758 & fn. 6 [155 Cal.Rptr. 269].) The court stated it had determined "[r]easonable hourly rates for compensable time . . . as lodestar amounts," and because there were insufficient funds to pay these amounts in full it had "apportioned the $3.4 million among counsel on the basis of the lodestar amounts and the contribution of counsel to the conduct of the litigation as it bears upon the final settlement entered herein." The court specified "lodestar" amounts of $2,440,325 for class counsel and $208,844 for Abascal, and then awarded counsel approximately 90 percent of those amounts.

The court also approved the referee's denial of further discovery and an evidentiary hearing, concluding that those measures were unnecessary. The statement of decision explained: "Over 4000 pages of memoranda,

pleading[s], and documents, including 700 pages of time records and other evidence have been reviewed by the referee and the court, and the findings have been based on relevant facts and legal principles. There has been extensive discovery on the merits of the case and all counsel are fully informed and fully conversant with the progress of the case, actions taken in the case and work performed. All counsel have had full and fair opportunity to critique and comment on each other's work."

Abascal filed a timely notice of appeal from the order allocating attorney fees. His opening brief states that the appeal is by three objectors to the settlement—Dorothy DeOliveira, Dee Filichia and David Bobiak. The notice of appeal, however, was filed by counsel for Abascal, solely in Abascal's name. Thus, Abascal is the true appellant.

Half the fee award was paid in February 1988. The other half has remained unpaid during the pendency of the appeal, and no interest is accruing.

III. DISCUSSION

A. *The Statement of Decision*

 Abascal contends the court's statement of decision was inadequate because it did not address disputed legal and factual issues. Specifically, he argues the court should have explained which of counsel's hours were disallowed, and how or whether any hours were apportioned among several ongoing checking account fee cases. He relies on Code of Civil Procedure section 632, which requires that "upon the trial of a question of fact by the court," and on party request, the court "shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial . . . ."

Abascal cites *Mandel v. Lackner, supra,* 92 Cal.App.3d at page 758, footnote 6, for the proposition that the determination of a motion for attorney fees is a "trial" within the meaning of Code of Civil Procedure section 632. This mischaracterizes the *Mandel* decision. The *Mandel* court expressly declined to decide whether requested formal findings were mandatory on a motion for attorney fees, noting that in *Serrano v. Priest, supra,* 20 Cal.3d at page 32, the California Supreme Court had reviewed findings on a motion for attorney fees without holding they had been required. (*Mandel, supra,* at pp. 758-759, fn. 6.) The *Mandel* court concluded only that, under *Serrano,* "an award of attorneys' fees in a case of this nature must be supported by a record showing, in formal findings or otherwise, that it was calculated from a base 'compilation of the time spent and reasonable hourly compensation of

each attorney' . . . ." (*Mandel, supra,* at pp. 758-759, fn. 6, quoting *Serrano, supra,* 20 Cal.3d at pp. 48-49.) In other words, the record need only show that attorney fees were awarded according to the "lodestar" or "touchstone" approach.

The California Supreme Court addressed this issue in *Maria P.* v. *Riles, supra,* 43 Cal.3d 1281. The court noted the general rule that "a statement of decision is not required upon decision of a motion," and said "we have discovered no case requiring a statement of decision for an order on a motion for attorney fees." (*Id.* at p. 1294.) The court concluded that although deficiencies in the appellate record made it "impossible for us to determine whether the trial court based its award on the lodestar adjustment method," the appellants were at fault, and thus a remand for redetermination of fees was unnecessary, because appellants had failed to furnish an adequate record. (*Id.* at pp. 1295-1296.)

By focusing on the need to determine whether the trial court based its award on the lodestar method, and by noting the absence of law requiring a statement of decision on a motion for attorney fees, the *Maria P.* opinion indicates that the minimal record showing required by *Mandel* is all that is necessary here. Thus, the applicable rule is prescribed not by Code of Civil Procedure section 632, but by *Mandel* and *Maria P.,* and is much less stringent. The trial court here may have issued a document with the generic title "statement of decision," but the mere use of that label did not invoke the requirements of section 632. (Cf. *In re Marriage of Loya* (1987) 189 Cal.App.3d 1636, 1638 [235 Cal.Rptr. 198] [appealability of judgment or order is determined by its substance and effect, not its label].) The record need only show that the attorney fees were awarded according to the "lodestar" or "touchstone" approach.

The court's statement of decision satisfied this minimal requirement, as it expressly stated that the court had awarded fees based on lodestar amounts, with further consideration of counsel's contributions to the litigation. Nothing more was necessary. The court was not required to explain which of counsel's hours were disallowed, or how or whether any hours were apportioned. ■ On appeal, we must infer all findings on these points in favor of the prevailing parties. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 [275 Cal.Rptr. 797, 800 P.2d 1227].)

■ Thus, for Abascal to mount a successful challenge to the substantial reduction of his hours, he must demonstrate that there was no factual or legal basis for the reduction. He has not even attempted to do so.

■ Even if Code of Civil Procedure section 632 did apply, Abascal waived any error by failing to bring the claimed defects to the attention of

the trial court after issuance of the statement of decision. (*In re Marriage of Arceneaux, supra,* 51 Cal.3d 1130.) Abascal's reply brief cites *McCurter v. Older* (1985) 173 Cal.App.3d 582, 594 [219 Cal.Rptr. 104], for the proposition that deficiencies in a statement of decision on a principal controverted issue are not waived by failure to object in the trial court. But *McCurter* was expressly disapproved by the California Supreme Court in *In re Marriage of Arceneaux, supra,* 51 Cal.3d 1130[1] which held that "a litigant who fails to bring to the attention of the trial court alleged deficiencies in the court's statement of decision waive[s] the right to complain of such errors on appeal, thereby allowing the appellate court to make implied findings in favor of the prevailing party. . . ." (*Arceneaux, supra,* at pp. 1132, 1137.) The *Arceneaux* decision explained that "it would be unfair to allow counsel to lull the trial court and opposing counsel into believing the statement of decision was acceptable, and thereafter to take advantage of an error on appeal although it could have been corrected at trial. . . . It is clearly unproductive to deprive a trial court of the opportunity to correct such a purported defect by allowing a litigant to raise the claimed error for the first time on appeal." (*Arceneaux, supra,* at p. 1138.) Having failed to give the trial court an opportunity to correct the claimed defects in the statement of decision, Abascal cannot fairly be permitted to complain of them now.

Some two months after briefing had been completed and class counsel had asserted Abascal's waiver, we permitted a group of objectors represented by Gary Near to file a late, two-sentence brief which simply adopted Abascal's briefs. Shortly thereafter, Abascal informed us he would rely on Near's tardy filing as a basis for avoiding a waiver under *Arceneaux,* since Near, unlike Abascal, had asked the trial judge for clarification of the statement of decision. But Near had only asked for clarification on the ground the statement of decision did not explain the reduction of *his own* hours by half. He has not asserted this point on appeal, but has simply joined in Abascal's briefs, which focus on the court's determination of *class counsel's* hours and do not complain about Near's hours. The issue of the sufficiency of the statement of decision as to apportionment of class counsel's hours was never presented to the trial judge by Near or Abascal, and was therefore waived.

---

[1]We cannot condone such reliance in a reply brief upon a case so unequivocally disapproved by our Supreme Court more than three months before the brief was filed. (See *In re Marriage of Arceneaux, supra,* 51 Cal.3d at p. 1137: "Thus, the statements in these older cases merely reflected the prevailing law at the time, a rule abrogated by the present version of [Code of Civil Procedure] section 634. Insofar as *McCurter v. Older, supra,* 173 Cal.App.3d 582, 594, and *Employers Casualty Co.* v. *Northwestern Nat. Ins. Group* [1980] 109 Cal.App.3d 462, 474 [167 Cal.Rptr. 296], can be read to hold that a party who fails to bring to the attention of the trial court an omission or ambiguity in its statement of decision may nevertheless avoid the presumptions in favor of the judgment, they are disapproved.")

■ Abascal also contends the *referee's* order lacked sufficient explanation to satisfy Code of Civil Procedure section 632, which he implies is encompassed by the requirement of Code of Civil Procedure section 643 that a referee provide a "statement of decision in writing to the court." But nothing in the Code of Civil Procedure suggests that a referee's "statement of decision" under section 643 must meet the explanatory requirements of section 632. Even if section 632 were generally applicable to a referee's report, the statute would not apply here because it does not apply to an order on a motion for attorney fees. In any event, the asserted insufficiency in the referee's order is inconsequential, since the order was supplanted by the trial court's statement of decision.

B., C.*

. . . . . . . . . . . . . . . . . . . . . .

IV. Disposition

The order allocating attorney fees is affirmed.

Peterson, J., and Anderson, J., concurred.

---

*See footnote, *ante*, page 1344.