Filed 3/25/22  Simons v. Superior Court CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ANN SIMONS, | B309885 |
| Petitioner, | (Los Angeles County Super. Ct. No. 19STCP01994) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| THE ENTERPRISE, et al., | |
| Real Parties in Interest. | |

Petition for writ of mandate.  Randolph Hammock, Judge. Relief denied.

Sauer & Wagner, Gerald L. Sauer and Gregory P. Barchie, for Petitioner.

Greenberg Traurig, Eric V. Rowen, Scott D. Bertzyk, and Matthew R. Gershman for Real Parties in Interest.

No appearance for Respondent.

_____

Ann Simons appeals an order granting attorney fees to the Enterprise, Gilad Lumer, Harry Lumer, Nathan Rubin, and David Wank (collectively, Enterprise) after Enterprise prevailed in a proceeding to confirm an arbitration award. Simons contends that the trial court abused its discretion by granting attorney fees because there was insufficient evidence to support a lodestar analysis. She further contends that the trial court lacked jurisdiction to issue the order and therefore the order should be vacated. We treat the appeal as a petition for an extraordinary writ and deny relief.

**BACKGROUND**

I.     The underlying arbitration and court proceedings[1]

The parties ran a business that primarily owned and operated parking lots across the nation. A written agreement governing their relationship contained arbitration and attorney fees provisions. The attorney fees provision provided that fees and costs incurred in a dispute as a result of or by reason of the agreement shall be awarded to the prevailing party.

When a dispute arose, Simons initiated arbitration, which was structured into three phases. The first phase involved governance issues and concluded in 2010 with a partial award in

---

[1] The background is largely from our opinion, *Simons v. Superior Court of Los Angeles County* (Sept. 30, 2021, B306193) [nonpub. opn.] (*Simons I*).

2

Enterprise's favor.  The trial court (Hon. Gregory Alarcon) confirmed the award and awarded Enterprise attorney fees in an amount that was 25 percent of what Enterprise had requested.

The second phase concluded in 2019 with another partial award.  In short, the award dissolved the business and distributed the properties comprising the business according to the parties' percentage interests—the so-called in-kind division.  Simons then petitioned the trial court to vacate the arbitration award, while Enterprise cross-petitioned to confirm it.  In her petition, Simons argued that the arbitrator was biased, he violated his disclosure obligations, and the award exceeded the arbitrator's power in multiple ways.

Enterprise filed a notice of related cases indicating that the petition to vacate the phase two award was related to the prior petition regarding the phase one award that had been heard before Judge Alarcon.  Although Simons opposed relating the cases, the trial court related them.  Simons then petitioned for a writ of mandate regarding the order relating the cases, and a different panel of this Division summarily denied the writ.

Simons also filed a peremptory challenge to the trial judge, and the matter was ultimately reassigned to Judge Hammock, who, after receiving briefing on the petitions and ordering supplemental briefing, confirmed the phase two award.  In May 2020, Judge Hammock entered a judgment that adopted the arbitration award as the judgment of the court, declared Enterprise the prevailing party, and found that Enterprise was entitled to recover its attorney fees in an amount to be determined by motion.

Simons appealed from the judgment, asserting that the arbitrator failed to make required disclosures, was biased, and

3

had exceeded his powers. She did not, however, challenge Judge Hammock's finding that Enterprise was the prevailing party and was entitled to recover attorney fees. In *Simons I*, *supra*, B306193, we affirmed the judgment in full, directing the trial court to enter it as an interlocutory judgment as the arbitration had not concluded.

## II. Enterprise moves for attorney fees

Enterprise then moved for attorney fees in the amount of $234,129.50[2] under Civil Code section 1717 as the prevailing party on the petitions to confirm and to vacate the arbitration award. In its motion, Enterprise described Simons's petition to vacate the award as being out of the ordinary, as it was 480 pages with exhibits and required Enterprise to oppose Simons's attempts to have the matter reassigned from Judge Alarcon who had confirmed the first arbitration award.

Attorney Eric Rowen of Greenberg Traurig submitted his declaration in support of the motion. He identified the three partners (himself, Matthew Gershman, and Karin Bohmholdt) and three associates (Christopher Ramos, Jamie Vogel, and Kelsey Sherman) who worked on the matter, their experience, what work they performed, and the hours each worked in 2019 and 2020, the years in which the petitions were pending in the trial court.

Instead of submitting billing records, Rowen generally described the work each attorney performed and the number of hours each attorney worked. As lead counsel, Rowen was responsible for strategy, developing facts and arguments, and

---

[2] Based on the hours billed and the rates, the actual amount was $236,129.50.

4

supervising and directing litigation. Gershman drafted briefs, attended court, developed case strategy, and managed the case on a day-to-day basis. Bohmholdt, who had appellate experience, worked on the writ. Ramos did research and analysis for briefing and prepared a preliminary draft of the reply in support of Enterprise's cross-petition. Sherman performed research and analysis for briefing, drafted the opposition to the peremptory challenge, and responded to Simons's objections to Enterprise's declaration. Vogel also performed research and analysis for "late-stage briefing" and helped with preparation for the hearing on the petitions.

Rowen additionally declared that care was taken in staffing and delegating responsibility to avoid overlap and duplication. Gershman therefore "ran point" on the briefs and was the "lead drafter," while Rowen supervised overall strategy, attended hearings, and did the final review of briefing. Associates "contributed primarily in support and research roles" and occasionally with drafting.

As to the petition, the attorneys worked the following number of hours: Rowen, 45.5; Gershman, 107.1; Ramos, 63.6; Vogel, 11.7; and Sherman, 59.8. As to the writ, attorneys worked the following number of hours: Rowen, 4.1; Bohmholdt, 1.9; Gershman, 5.0; and Sherman, 0.7. The attorneys' billing rates were: $1,250 for Rowen in 2019, increased to $1,315 in 2020; $880 for Bohmholdt; $830 for Gershman in 2019, increased to $890 in 2020; Ramos, $695; Vogel, $580; and Sherman, $445. Rowen further argued that these rates were within rate ranges for partners and associates with comparable experience in California. To support that argument, he submitted a 2015 National Law Journal billing survey showing that partners'

5

billing rates at the nation's fifty "priciest" law firms ranged from $1,055 to $715.

The attorneys thus billed a total of 287.7 hours for a total of $222,871 for the petition and 11.7 hours for a total of $11,258.50 for the writ.

III.    Simons's opposition to the fee motion

Simons opposed the fee motion on the grounds that Enterprise's attorneys "overstaffed, overbilled and overcharged." She argued that Rowen's declaration was insufficient to support the fee request, pointing out that the attorneys had not submitted billing records or otherwise broken down their time; instead, Simons said they "block billed."[3]  Simons further argued that the rates were unreasonable, stating that her attorney, whose experience was comparable to Greenberg Traurig's partners, billed at the same hourly rate as a junior associate at that firm.  Although Simons urged the trial court not to award Enterprise any fees, she suggested that if the trial court were otherwise inclined, it should award fees based on 25 percent of the claimed hours at a rate of $445, which was the junior associate's rate.

Significantly, while Simons argued that the corporate entity lacked standing to recover fees as a nonsignatory to the arbitration agreement, she did not argue that Enterprise was not the prevailing party.

---

[3] Simons uses the term "block billing" to refer to Rowen's general descriptions in his declaration of the work each attorney did on the case.  Because the term "block billing" was used by Simons in her argument and by the court in its ruling, we use the term in this opinion in the same way.

6

IV.    The trial court's ruling on the fee motion

The trial court issued a tentative ruling granting Enterprise, as the prevailing party on the petitions, attorney fees in the reduced amount of $170,000.  At the hearing on the fee motion, the trial court commented that while it had raised its eyebrows at Rowen's rate, the trial court was not saying he "wasn't worth it."  Rather, "power hitters" had to be efficient and not engage in tasks like summarizing depositions but instead should be appearing at trial or hearings.  The trial court therefore found that the attorneys' rates were generally reasonable except for those at the upper end of the fee scale, so it capped Rowen's rate at $1,000.

The trial court also found that some of the hours Enterprise's attorneys were claiming were "unwarranted based on" Rowen's declaration and supporting documents.  As an example, the trial court said that Rowen's declaration was overly long and contained "pages of which were unnecessary to the resolution of that motion.  The length of either side's filings does not equate to complexity; it may, in fact, equate to unnecessary work."

Although the trial court acknowledged the fairness of Simons's comments that block billing made it difficult for her to challenge, for example, duplicative work, the trial court nonetheless found there was ample evidence to support an award of $170,000 "by the sole means of a lodestar."  The trial court said that Rowen's declaration was sufficient for it to conduct a lodestar analysis, "which it did."  And in response to Simons's objections to block billing, the trial court agreed that the more tasks were broken down, the more the billing might be believed but block billing was not inappropriate.  Further, the trial court

7

noted that a lot of money was at stake in the action, and "sometimes big-time litigation results in big-time fees."

Accordingly, the trial court adopted its tentative, saying it had utilized a lodestar approach and "in view of the totality of the circumstances," $170,000 was a reasonable award. The trial court added that Simons's attorneys could have submitted their billing records to show that Enterprise's billing records were drastically disproportionate to theirs, and that Simons's failure to do so may be "telling." Finally, the trial court rejected Simons's proposed approach of reducing the requested fees by the same percentage that Judge Alarcon had used in reducing fees in the first phase of the proceedings.

## DISCUSSION

### I. Appealability

In *Simons I*, *supra*, B306193, we considered whether the trial court had properly confirmed the phase two award. Before addressing the merits of that issue, we addressed threshold jurisdictional and appealability issues. Given that the arbitration had proceeded in phases, with another perhaps to come, we considered whether the award was final within the meaning of Code of Civil Procedure section 1283.4, which provides that an arbitration award shall determine all questions submitted to the arbitrator, the decision of which is necessary to determine the controversy. (*Ibid.*) We found that a partial award resolving a critical area of dispute—here, division of Enterprise's properties—even though other issues are left for resolution, may be final. Further finding that the phase two award was such an award, we concluded that the trial court had jurisdiction to hear the petitions to vacate and to confirm the arbitration awards.

8

(*Simons I, supra*, B306193.) However, we also found that an appeal did not lie from a partial or interim award such as the one before us and, following *Hightower v. Superior Court* (2001) 86 Cal.App.4th 1415, we deemed the appeal to be a petition for a writ of mandate.

Given our finding that the order confirming the phase two award was an interim one, the parties now point out that an order granting attorney fees is generally appealable as "an order made after a judgment," per Code of Civil Procedure section 904.1, subdivision (a)(2), which the order before us arguably is not. However, some courts have found that where an order "essentially" amounts to a judgment on the only issue in the trial court, a later appeal from the related order denying attorney fees lies. (*Otay River Constructors v. San Diego Expressway* (2008) 158 Cal.App.4th 796, 801, 805 [order denying arbitration was judgment on only issue before trial court, so later order denying attorney fees appealable as order after judgment].)

Even if the order here were not directly appealable under Code of Civil Procedure section 904.1, as *Otay* suggests, the order is reviewable as a writ. As Enterprise suggests, although the arbitrator divided the arbitration into three phases, it is unclear whether the third phase will occur. If it doesn't, the attorney fees issue raised here could evade review or be unnecessarily delayed. Where, as here, the record demonstrates a lack of adequate remedy at law, we will treat the appeal as a petition for an extraordinary writ. (See, e.g., *Olson v. Cory* (1983) 35 Cal.3d 390, 400–401.)

9

II.    Attorney fees

As to the merits, Simons contends that the trial court abused its discretion in awarding attorney fees to Enterprise because there was insufficient evidence to support a lodestar analysis.  We disagree.

Determining attorney fees begins with the lodestar, i.e., the number of hours reasonably expended multiplied by a reasonable hourly rate.  (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.)  The reasonable hourly rate is the one prevailing in the community for similar work.  (*Ibid.*)  The lodestar may be adjusted based on factors specific to the case to fix the fee at the fair market value for the legal services provided.  (*Ibid.*)  This "approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary."  (*Ibid.*)  In making its determination, a trial court may consider the nature of the litigation, its difficulty, the amount involved, the skill required in handling it, the skill employed, the attention given, success or failure, and other circumstances.  (*Id.* at p. 1096.)

We generally review an order granting attorney fees for abuse of discretion.  (*Concepcion v. Amscan Holdings, Inc.* (2014) 223 Cal.App.4th 1309, 1319.)  With respect to the amount of fees awarded, our review is highly deferential to the trial court's views.  (*Ibid.*)  That is partially because an experienced trial judge is in the best position to decide the value of professional services rendered in its court.  (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132.)  Notwithstanding this deferential standard of review, the trial court's exercise of discretion must be based on a proper utilization of the lodestar method, and the trial court will be found to have abused its discretion if there is no

10

reasonable basis for its ruling or it applied the wrong standard or test. (*Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1239–1240.)

Simons's chief complaint is that the trial court here abused its discretion because there was insufficient evidence from which it could have performed a lodestar analysis. Simons thus first faults Greenberg Traurig for what she calls block billing, by which she means how Rowen generally described what each attorney did and the number of hours each attorney devoted to the case. Block billing typically occurs when an attorney identifies multiple tasks done over one period of time and does not specify the time spent on individual tasks. (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1010.) Although not preferred, block billing is not per se objectionable. (*Jaramillo v. County of Orange* (2011) 200 Cal.App.4th 811, 830; see, e.g., *Nightingale v. Hyundai Motor America* (1994) 31 Cal.App.4th 99, 102–103 [monthly statements containing block billing sufficient for trial court to determine time billed was reasonable].) But trial courts may penalize block billing when the practice prevents them from distinguishing compensable tasks from ones that are not. (*In re Marriage of Nassimi* (2016) 3 Cal.App.5th 667, 695; see also *Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1325 [block billing can exacerbate vagueness of fee request].)

Here, the trial court expressly found Rowen's descriptions of the work each attorney performed on the petitions and writ sufficient for it to determine the lodestar. While the descriptions concededly were general, Rowen nonetheless did describe the work each attorney performed. (Compare *Martino v. Denevi* (1986) 182 Cal.App.3d 553, 559–560 [flat fee unsupported except

11

by attorney's "general 'feeling' " about case and work done].) Rowen was lead strategist and supervisor; Gershman managed the case on a day-to-day basis; Bohmholdt worked only on the writ; and the three associates primarily researched and drafted briefs. In reviewing the adequacy of the billing, it is important to note that Judge Hammock ruled on the petitions to vacate and to confirm the award. He therefore was intimately familiar with the matter, its complexity, briefing, and supplemental briefing he had ordered.[4] And, as he stated at the hearing on the fee motion, he too was a former litigator and had knowledge of fee-related issues. In short, this experienced trial judge was in the best position to decide the value of professional services rendered in his court. (See generally *Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1132.)

Although criticisms of block billing are at times fair, we are not persuaded they are fair here. This case is not like *Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 688 to 689, which held that the trial court should have determined which fees were incurred in connection with a Brown Act violation and thus recoverable, and which fees were unrelated to the Brown Act

---

[4] We disagree with Simons's suggestion that confirming the award required Enterprise to "merely" provide the arbitration agreement and a copy of the award and identify the arbitrator. Rather, Simons's petition raised at least three complex factual and legal reasons to vacate the award, including that the arbitrator was biased, had violated his disclosure duties, and exceeded his powers by ordering a remedy that "(1) was prohibited by the parties' agreement, (2) violated statutory public policy, (3) was not rationally related to the breaches Simons alleged, and (4) was imposed without notice to Simons." (*Simons I*, *supra*, B306193, at pp. 24–25.)

and thus not recoverable.  The court noted that block billing was therefore especially problematic because it could not be ascertained which tasks related to the Brown Act and which did not.  (*Id.* at p. 689.)

Apportionment is not an issue in this case.  Instead, the fees requested were for a petition to vacate an arbitration award, a cross-petition to vacate the award, challenges to the trial judge, and a related writ, all of which the trial court found were recoverable under the arbitration agreement and Civil Code section 1717.

Simons nonetheless suggests that time billed for "ancillary briefing" and Enterprise's opposition to the peremptory challenge was not compensable.  However, she cites no authority that those are unrecoverable fees, and we discern no reason why they would not be recoverable.

Simons also complains that Rowen's declaration is inadequate or misleading because it cannot be ascertained whether Greenberg Traurig sought attorney fees for preparing the fee motion itself, and that ambiguity could have led the trial court to think that the billing did include such fees.  We do not agree.  Rowen described the proceedings that he and his attorneys billed for—namely, the petitions, the notice of related cases, the writ, and opposing the peremptory challenge.  He did not identify the fee motion.

Simons further faults the trial court for the supposed opacity of its calculations, noting it rejected Simons's proposal to award 25 percent of the amount requested and did not use a negative multiplier.  Simon thus surmises that the fee award must have been the product of whimsy, pulled out of thin air. (See, e.g., *Gorman v. Tassajara Development Corp.* (2009) 178

Cal.App.4th 44, 101 (*Gorman*).)  However, in using the lodestar method, a trial court has no obligation to articulate that method explicitly.  (*Ibid.*)  The trial court has no duty to make specific factual findings explaining how it calculated the fee award; instead, we will infer all findings in support of the trial court's determination.  (See generally *California Common Cause v. Duffy* (1987) 200 Cal.App.3d 730, 754–755; *Rebney v. Wells Fargo Bank* (1991) 232 Cal.App.3d 1344, 1349 [court need not identify hours disallowed or how or whether apportioned].)

Instead, where a trial court states legitimate reasons for reducing a fee award, we will not reverse the award, even if the trial court failed to make its arithmetic transparent, unless the award is so large or small that it shocks the conscience and suggests passion and prejudice influenced the decision.  (*Save Our Uniquely Rural Community Environment v. County of San Bernardino* (2015) 235 Cal.App.4th 1179, 1190, disagreeing with *Gorman, supra,* 178 Cal.App.4th 44; *In re Tobacco Cases I* (2013) 216 Cal.App.4th 570, 587.)

There was nothing arbitrary or whimsical about the attorney fees award here.  The trial court identified the legal principle it was following:  the lodestar method.  And it explained how it reached the $170,000 award.  The trial court said it capped Rowen's rate at $1,000 and omitted unnecessary work, which supports a conclusion that the trial court reviewed the hours each attorney worked.  (See *Christian Research Institute v. Alnor, supra,* 165 Cal.App.4th at p. 1324 [trial court's finding that work was duplicative and unnecessary showed its familiarity with billing submissions].)  The trial court therefore reduced the request by about $64,000.  That we cannot ascertain with certainty how many hours the trial court cut or from which

14

attorneys does not require reversal, as the ultimate award does not shock the conscience.

Nor are we persuaded otherwise by *Gorman*, *supra*, 178 Cal.App.4th 44, on which Simons relies. In that case, the plaintiffs sought $1,350,538.83 in attorney fees. (*Id.* at p. 53.) In a terse order, the trial court awarded $416,581.37 and denied a request for a statement of decision. (*Ibid.*) While the Court of Appeal agreed that the award's precision suggested it was the product of a mathematical computation, it was unable to recreate the result. (*Id.* at p. 99.) The Court of Appeal therefore concluded that the number appeared to have been "snatched whimsically from thin air" and was therefore arbitrary. (*Id.* at p. 101; accord, *Roe v. Halbig* (2018) 29 Cal.App.5th 286, 311 [when no apparent reasonable basis for the award, award itself is evidence it resulted from arbitrary determination].) It therefore remanded the matter.

Without deciding whether we agree with *Gorman*, it is nonetheless distinguishable. The Court of Appeal said it might have affirmed the fee award had the trial court given a reason or cited any factor recognized in case law for reducing the lodestar, such as the case was overlitigated. (*Gorman*, *supra*, 178 Cal.App.4th at p. 101.) Here, the trial court cited several reasons for its award: the hourly rates claimed generally were reasonable and the large amount of money at stake in the litigation justified significant expenditures of attorney time. The trial court also explained why it was awarding less than Enterprise sought: overlitigation and an unreasonable attorney fee rate for Rowen. *Gorman* therefore does not compel a finding that the award here resulted from whimsy.

Nor is there any merit to Simons's contention that the trial court improperly shifted the burden of proof to her. In its ruling, the trial court merely observed that Simons could have submitted her attorneys' billing records to buttress her argument that Enterprise's attorneys overbilled. The trial court did not state that such evidence was a requirement. Indeed, that the trial court awarded a substantially reduced fee shows it did not penalize Simons for omitting that evidence.

Finally, to the extent Simons argues that the appeal should be dismissed because there can be no prevailing party until phase three of the arbitration has concluded, the argument fails for two reasons. First, Simons did not oppose Enterprise's fee motion in the trial court on the ground that Enterprise was either not the prevailing party or could not be found to be so until all phases of the arbitration concluded. We generally will not consider claims made for the first time on appeal that could have been but were not presented to the trial court. (*Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 972.)

Second, in the May 2020 judgment, the trial court specifically found that Enterprise was the prevailing party and was entitled to recover its attorney fees by appropriate motion. It does not appear that Simons objected to the prevailing party determination in the judgment, and, more significantly for our purposes, she did not challenge that finding in the prior appeal. Having failed to do so, Simons may not collaterally attack the judgment in this proceeding. (*People v. Jordan* (2018) 21 Cal.App.5th 1136, 1143 ["Waiver precludes successive appeals based on issues ripe for consideration in the prior appeal and not brought in that proceeding."].)

## DISPOSITION

Because the trial court did not abuse its discretion in awarding fees to Enterprise, the petition is denied.  Real parties in interest may recover their appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

EGERTON, J.